**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

PS INDUSTRIES INCORPORATED,
a North Dakota corporation,

      Plaintiff,

v.

GARLOCK SAFETY SYSTEMS, INC.,
a Michigan corporation,

      Defendant.

**Case No.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, PS INDUSTRIES INCORPORATED ("PS Industries" or "Plaintiff"), a North Dakota corporation, by and through the undersigned, hereby files this Complaint for Patent Infringement against Defendant, GARLOCK SAFETY SYSTEMS, INC. ("Garlock" or "Defendant"), a Michigan corporation, and states as follows:

### JURISDICTION, VENUE, AND THE PARTIES

1.    This is an action brought pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq.*

2.    This Court has original jurisdiction pursuant to Title 28, United States Code, Sections 1331 and 1338, as this case involves patent infringement and federal questions arising under the Constitution, laws, or treaties of the United States.

3.    PS Industries is a North Dakota corporation with a principal place of business in Grand Forks, North Dakota.

4.    Defendant is a Michigan corporation with an established place of business in this District, namely, Spring Lake, Michigan.

5. This action arises as a result of Defendant's infringing conduct, including without limitation acts of infringement that Defendant has committed in this District.

6. This Court has personal jurisdiction over the Defendant because Garlock is a Michigan corporation and because Garlock conducts, and has conducted, business within Michigan, including, but not limited to, offering products and services for sales in Michigan.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 28 U.S.C. § 1400(b) because Garlock is a Michigan corporation.

**GENERAL ALLEGATIONS**

8. PS Industries has been researching and developing cutting edge technology in the field of safety gates and has become a trusted supplier for the same across the United States.

9. PS Industries has continuously researched the loading dock safety gate market to address issues it perceived as going unchecked or which had subpar solutions. Relevant to this action, PS Industries set out to eliminate what it identified as some of the most important issues during the design and development of its innovative safety gates: ease of opening and closing, maintaining such gates in a secure open orientation, and mitigating gate operator injury risk.

10. To address these and related problems, PS Industries invented the innovative safety gates which are the subject of U.S. Patent Nos. 10,907,314 (the "'314 Patent"), 11,608,603 (the "'603 Patent"), and 12,054,898 (the "'898 Patent") (the '314 Patent, the '603 Patent, and the '898 Patent are collectively referred to herein as the "Plaintiff's Patents").

11. The '314 Patent was issued to PS Industries by the U.S. Patent and Trademark Office ("USPTO") on February 2, 2021.

12. The '603 Patent was issued to PS Industries by the USPTO on March 21, 2023.

13. The '898 Patent was issued to PS Industries by the USPTO on August 6, 2024.

2

14.    PS Industries is the owner of Plaintiff's Patents.

15.    As such, PS Industries has the exclusive right to, *inter alia*, collect revenues and profits derived from Plaintiff's Patents, to exclude others from making, using, offering for sale, selling, or importing into the United States any goods that practice Plaintiff's Patents, as well as controlling all aspects of licensing the aforementioned rights.

## DEFENDANT'S INFRINGEMENT OF PLAINTIFF'S PATENTS

16.    Defendant is a safety equipment supplier that designs, produces, and sells, *inter alia*, loading dock safety gates.

17.    Defendant's safety gates, including the SentryGuard Gate and other like-gates (collectively, the "Accused Products"), feature designs or other elements which infringe Plaintiff's Patents.

18.    PS Industries has never licensed any of Plaintiff's Patents to Defendant.

19.    On February 8, 2021, PS Industries placed Defendant on written notice that Defendant's Accused Products infringed upon the '314 Patent, and further demanded that Defendant cease making, using, importing, selling, and offering for sale of the Accused Products. *See Exhibit 1*, First Cease and Desist Letter.

20.    On August 27, 2025, PS Industries once again placed Defendant on written notice that Defendant's Accused Products infringed upon Plaintiff's Patents, and further demanded that Defendant cease all making, using, importing, selling, and offering for sale of the Accused Products. *See Exhibit 2*, Second Cease and Desist Letter.

21.    Defendant responded to the First and Second Cease and Desist Letters, but has refused to cease its infringing activities.

**THE '314 PATENT**

22.    On February 2, 2021, the USPTO issued the '314 Patent, entitled *Safety gate*. A true and correct copy of the '314 Patent is attached hereto as *Exhibit 3* and is incorporated by reference.

23.    The '314 Patent describes apparatus and methods for assembling, installing, and operating a manually operated gate (e.g., a safety gate), which can include a gate frame and a spring assembly. The gate frame can include a proximal upright member, a distal upright member, an upper arm, and a lower arm. The proximal upright member can be anchored to a stationary surface. The upper arm and lower arm can be pivotably coupled to the proximal upright member and distal upright member to form a parallelogram. The manually operated gate can be configured to pivot between an open position and a closed position at a constant angular velocity. The gate can freely pivot to the closed position from a self-close position. A kit can contain the required structural components and instructions and can be used to assemble the manually operated gate assembly. *See Exhibit 3*, Abstract.

24.    The '314 Patent includes a first independent claim, Claim 1, which recites:

1.    A manually operated gate comprising:

(a)    a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm being pivotable relative to the proximal upright member and the distal upright member to move the gate frame between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)    a spring assembly coupled to the gate frame, the spring assembly configured to maintain movement of the gate frame from a self-close position to the closed position at a generally constant angular velocity after the gate frame has been manually pivoted from the open position toward the closed position, wherein the

4

spring assembly is positioned closer to the distal upright member than to the proximal upright member.

25.    The '314 Patent includes a dependent Claim 7, which recites:

7.    The manually operated gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame.

26.    The '314 Patent includes a dependent Claim 8, which recites:

8.    The manually operated gate of claim 1, wherein the spring assembly comprises a fluid spring.

27.    The '314 Patent includes a dependent Claim 9, which recites:

9.    The manually operated gate of claim 1, wherein the spring assembly is configured to hold the upper arm and the lower arm generally vertically when the gate frame is in the open position.

28.    The '314 Patent includes a dependent Claim 11, which recites:

11.    The manually operated gate of claim 1, further comprising: (c) a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position.

29.    The '314 Patent includes a dependent Claim 12, which recites:

12.    The manually operated gate of claim 1, wherein the spring assembly is further configured to assist movement of the gate frame from the closed position to the open position.

30.    The '314 Patent includes a second independent claim, Claim 13, which recites:

13.    A manually operated gate comprising:

(a)    a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm being pivotable relative to the proximal upright member and the distal upright member to move the gate frame between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)    a spring assembly coupled to the gate frame and positioned closer to the distal upright member than to the proximal upright member, the spring assembly

5

configured to assist movement of the gate frame between the open position and the closed  position.

31.    The '314 Patent includes a dependent Claim 14, which recites:

14.    The manually operated gate of claim 13, wherein the spring assembly comprises a fluid spring.

32.    The '314 Patent includes a dependent Claim 15, which recites:

15.    The manually operated gate of claim 13, wherein the spring assembly is configured to assist movement of the gate frame from the closed position to the open position.

33.    The '314 Patent includes a dependent Claim 16, which recites:

16.    The manually operated gate of claim 13, further comprising: (c) a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position.

34.    The '314 Patent includes a dependent Claim 22, which recites:

22.    The manually operated gate of claim 13, wherein the spring assembly is configured to hold the upper arm and the lower arm generally vertically when the gate frame is in the open position.

35.    The '314 Patent includes a dependent Claim 23, which recites:

23.    The manually operated gate of claim 13, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame.

36.    Defendant has directly infringed at least Claims 1, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 23 of the '314 Patent (collectively, the "Asserted Claims"), both literally and under the Doctrine of Equivalents, by making, using, offering for sale, or selling within the United States the Accused Products in violation of 35 U.S.C. § 271(a).

37.    Defendant has had knowledge of the '314 Patent and the manner of Defendant's infringement since at least February 8, 2021.

38.     PS Industries has complied with the notice requirements of 35 U.S.C. § 287 by marking its products which are the subject of the '314 Patent, by adequately notifying the Defendant of the infringement prior to the filing of this action, and/or by virtue of the filing of this action.

39.     Despite the foregoing, Defendant has failed to cease use of the Accused Products or its other infringing activities.

## THE '603 PATENT

40.     On March 21, 2023, the USPTO issued the '603 Patent, entitled *Safety gate*. A true and correct copy of the '603 Patent is attached hereto as ***Exhibit 4*** and is incorporated by reference.

41.     The '603 Patent describes apparatus and methods for assembling, installing, and operating a manually operated gate (e.g., a safety gate), which can include a gate frame and a spring assembly. The gate frame can include a proximal upright member, a distal upright member, an upper arm, and a lower arm. The proximal upright member can be anchored to a stationary surface. The upper arm and lower arm can be pivotably coupled to the proximal upright member and distal upright member to form a parallelogram. The manually operated gate can be configured to pivot between self-close position and a closed position at a constant angular velocity. A kit can contain the required structural components and instructions can be used to assemble the manually operated gate assembly. *See **Exhibit 4***, Abstract.

42.     The '603 Patent includes a first independent claim, Claim 1, which recites:

1.     A manually operated gate comprising:

(a)     a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm

7

are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)    a spring assembly coupled to the gate frame, the spring assembly configured to maintain movement of the gate frame from a self-close position, between the open position and the closed position, to the closed position at a generally constant angular velocity after the gate frame has been manually pivoted from the open position toward the closed position, wherein the spring assembly is configured to hold the gate frame in the open position when the gate frame is in the open position.

43.    The '603 Patent includes a dependent claim, Claim 2, which recites:

2.    The manually operated gate of claim 1, wherein the spring assembly is further configured to dampen movement of the gate frame from the open position to the self-close position.

44.    The '603 Patent includes a dependent claim, Claim 8, which recites:

8.    The manually operated gate of claim 1, wherein the upper arm is coupled to the proximal upright member at an upper pivot point, wherein the lower arm is coupled to the proximal upright member at a lower pivot point, and wherein the power pivot point is located nearer to the distal upright member than is the upper pivot point when the gate frame is in the closed position.

45.    The '603 Patent includes a dependent claim, Claim 10, which recites:

10.    The manually operated gate of claim 1, wherein the spring assembly is further configured to assist movement of the gate frame from the closed position to the open position.

46.    The '603 Patent includes a dependent claim, Claim 11, which recites:

11.    The manually operated gate of claim 1, further comprising: (c) a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position.

47.    The '603 Patent includes a dependent claim, Claim 13, which recites:

13.    The manually operated gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame.

48.    The '603 Patent includes a dependent claim, Claim 14, which recites:

14.    The manually operated gate of claim 1, wherein the upper arm and the lower arm are spaced apart from one another when the gate frame is in the open position.

8

49.    The '603 Patent includes a dependent claim, Claim 15, which recites:

15.    The manually operated gate of claim 1, wherein the spring assembly comprises a fluid spring.

50.    The '603 Patent includes a second independent claim, Claim 16, which recites:

16.    A manually operated fall prevention gate comprising:

(a)    a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)    a spring assembly coupled to the gate frame, the spring assembly configured to dampen manual movement of the gate frame from the open position toward the closed position to a self-close position and to maintain movement of the gate frame from the self-close position to the closed position at a generally constant angular velocity, wherein the self-close position is disposed between the open position and the closed position and the spring assembly is configured to hold the gate frame in the open position when the gate frame is in the open position.

51.    The '603 Patent includes a dependent claim, Claim 17, which recites:

17.    The manually operated fall prevention gate of claim 16, wherein the gate frame forms an angle between the lower arm and a horizontal, and wherein the angle is between 45 degrees and 80 degrees when the gate frame is in the self-close position.

52.    The '603 Patent includes a dependent claim, Claim 18, which recites:

18.    The manually operated fall prevention gate of claim 16, wherein the gate frame forms an angle between the lower arm and a horizontal, and wherein the angle is between 65 degrees and 80 degrees when the gate frame is in the self-close position.

53.    The '603 Patent includes a dependent claim, Claim 20, which recites:

20.    The manually operated fall prevention gate of claim 16, wherein the spring assembly is coupled to the lower arm and the distal upright member.

54.    The '603 Patent includes a dependent claim, Claim 21, which recites:

9

21.    The manually operated fall prevention gate of claim 16, wherein the spring assembly is further configured to assist movement of the gate from the closed position to the open position.

55.    The '603 Patent includes a dependent claim, Claim 22, which recites:

22.    The manually operated fall prevention gate of claim 16, wherein the upper arm is coupled to the proximal upright member at an upper pivot point, wherein the lower arm is coupled to the proximal upright member at a lower pivot point, and wherein the lower pivot point is located nearer to the distal end than is the upper pivot point when the gate frame is in the closed position.

56.    The '603 Patent includes a dependent claim, Claim 23, which recites:

23.    The manually operated fall prevention gate of claim 16, wherein the upper arm and the lower arm are spaced apart from one another when the gate frame is in the open position.

57.    Defendant has directly infringed at least Claims 1, 2, 8, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, and 23 the '603 Patent (collectively further incorporated into the "Asserted Claims"), both literally and under the Doctrine of Equivalents, by making, using, offering for sale, or selling within the United States the Accused Products in violation of 35 U.S.C. § 271(a).

58.    Defendant has had knowledge of the '603 Patent and the manner of Defendant's infringement since at least August 27, 2025.

59.    PS Industries has complied with the notice requirements of 35 U.S.C. § 287 by marking its products which are the subject of the '603 Patent, by adequately notifying the Defendant of the infringement prior to the filing of this action, and/or by virtue of the filing of this action.

60.    Despite the foregoing, Defendant has failed to cease use of the Accused Products or its other infringing activities.

**THE '898 PATENT**

61.     On August 6, 2024, the USPTO issued the '898 Patent, entitled *Safety gate*. A true and correct copy of the '898 Patent is attached hereto as ***Exhibit 5*** and is incorporated by reference.

62.     The '898 Patent describes apparatus and methods for assembling, installing, and operating a manually operated gate (e.g., a safety gate). The manually operated safety gate can include a gate frame and a spring assembly. The gate frame can include a proximal upright member, a distal upright member, an upper arm, and a lower arm. The proximal upright member can be anchored to a stationary surface. The upper arm and lower arm can be pivotably coupled to the proximal upright member and distal upright member to form a parallelogram. The manually operated gate can be configured to pivot between an open position and a closed position at a constant angular velocity. The gate can freely pivot to the closed position from a self-close position. A kit can contain the required structural components and instructions can be used to assemble the manually operated gate assembly. *See **Exhibit 5***, Abstract.

63.     The '898 Patent includes a first independent claim, Claim 1, which recites:

> 1.       A manually operated gate comprising:
>
> (a)      a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and
>
> (b)      a spring assembly coupled to the gate frame, the spring assembly being positioned closer to the distal upright member than to the proximal upright member, the spring assembly configured to assist movement of the gate frame from the closed position to the open position and configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position.

64.     The '898 Patent includes a dependent claim, Claim 7, which recites:

11

7.       The manually operated gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame.

65.    The '898 Patent includes a dependent claim, Claim 8, which recites:

8.       The manually operated gate of claim 1, wherein the spring assembly comprises a fluid spring.

66.    The '898 Patent includes a dependent claim, Claim 10, which recites:

10.       The manually operated gate of claim 1, further comprising: a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position.

67.    The '898 Patent includes a dependent claim, Claim 11, which recites:

11.       The manually operated gate of claim 1, wherein the spring assembly comprises one or more gas springs.

68.    The '898 Patent includes a second independent claim, Claim 14, which recites:

14.       A manually operated gate comprising:

(a)       a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)       a spring assembly coupled to the gate frame, the spring assembly pivotably coupling the lower arm to the distal upright member of the gate frame, the spring assembly configured to assist movement of the gate frame from the closed position to the open position and configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position.

69.    The '898 Patent includes a third independent claim, Claim 15, which recites:

15.        A manually operated gate comprising:

(a)       a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram, the upper

arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal; and

(b)      a spring assembly coupled to the gate frame closer to the distal upright member than to the proximal upright member, the spring assembly configured to assist movement of the gate frame from the closed position to the open position and configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position.

70.     The '898 Patent includes a dependent claim, Claim 16, which recites:

16.     The manually operated gate of claim 15, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame.

71.     The '898 Patent includes a dependent claim, Claim 20, which recites:

20.     The manually operated gate of claim 15, wherein the spring assembly comprises a gas spring, a hydraulic spring, or a steel coil spring.

72.     The '898 Patent includes a dependent claim, Claim 21, which recites:

21.     The manually operated gate of claim 15, wherein the spring assembly comprises a pair of springs pivotably coupling the lower arm to the distal upright member of the gate frame.

73.     Defendant has directly infringed at least Claims 1, 7, 8, 10, 11, 14, 15, 16, 20, and 21 of the '898 Patent (collectively further incorporated into the "Asserted Claims") (collectively further incorporated into the "Asserted Claims"), both literally and under the Doctrine of Equivalents, by making, using, offering for sale, or selling within the United States the Accused Products in violation of 35 U.S.C. § 271(a).

74.     Defendant has had knowledge of the '898 Patent and the manner of Defendant's infringement since at least August 27, 2025.

75.     PS Industries has complied with the notice requirements of 35 U.S.C. § 287 by marking its products which are the subject of the '898 Patent, by adequately notifying the

Defendant of the infringement prior to the filing of this action, and/or by virtue of the filing of this action.

76.    Despite the foregoing, Defendant has failed to cease use of the Accused Products.

77.    Defendant has directly or indirectly infringed the Plaintiff's Patents, including by inducing or contributing to the infringement.

78.    All conditions precedent have been met, waived, and/or satisfied to bring this lawsuit.

## COUNT I
## INFRINGEMENT OF THE '314 PATENT

79.    Plaintiff re-alleges and re-asserts Paragraphs 1 through 78 as if fully set forth herein.

80.    Defendant has made, used, sold, offered for sale, and/or imported safety gates, including the Accused Products, that practice at least Claims 1, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 23 of the '314 Patent. Such unlawful conduct continues as of the filing of this Complaint.

81.    Specifically, the Accused Products meet all limitations of at least Claims 1, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 23 of the '314 Patent.

82.    As more particularly set forth above, Claim 1 of the '314 Patent recites "A manually operated gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface . . . ," as depicted below:

14



83.    Continuing, Claim 1 of the '314 Patent provides for "the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram. . . .," as depicted below:



15

84.     Continuing further, Claim 1 of the '314 Patent recites "the upper arm and the lower arm being pivotable relative to the proximal upright member and the distal upright member to move the gate frame between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:



CLOSED POSITION: UPPER ARM AND LOWER ARM GENERALLY HORIZONTAL

OPEN POSITION: UPPER ARM AND LOWER ARM GENERALLY VERTICAL

85.     Moreover, Claim 1 of the '314 Patent provides for: "(b) a spring assembly coupled to the gate frame, the spring assembly configured to maintain movement of the gate frame from a self-close position to the closed position at a generally constant angular velocity after the gate frame has been manually pivoted from the open position toward the closed position, wherein the spring assembly is positioned closer to the distal upright member than to the proximal upright member," as depicted below:





86.     As more particularly set forth above, Claim 7 of the '314 Patent recites the "gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame," as shown below:



17

87.     As more particularly set forth above, Claim 8 of the '314 Patent recites the "gate of claim 1, wherein the spring assembly comprises a fluid spring," as shown below:



88.     As more particularly set forth above, Claim 9 of the '314 Patent recites the "gate of claim 1, wherein the spring assembly is configured to hold the upper arm and the lower arm generally vertically when the gate frame is in the open position," as depicted below:



89.     As more particularly set forth above, Claim 11 of the '314 Patent recites the "gate of claim 1, further comprising: (c) a gate catch anchored to the stationary surface and configured

18

to receive the distal upright member when the gate frame is in the closed position," as depicted below:



90.    As more particularly set forth above, Claim 12 of the '314 Patent recites the "gate of claim 1, wherein the spring assembly is further configured to assist movement of the gate frame from the closed position to the open position," as depicted immediately above.

91.    As more particularly set forth above, Claim 13 of the '314 Patent recites the foregoing elements as stated in Paragraphs 82 through 84 above, in addition to "a spring assembly coupled to the gate frame and positioned closer to the distal upright member than to the proximal upright member, the spring assembly configured to assist movement of the gate frame between the open position and the closed position," as depicted below:



Operation assisted by gas struts for easy lifting.



92.    As more particularly set forth above, Claim 14 of the '314 Patent recites the "gate of claim 13, wherein the spring assembly comprises a fluid spring," as depicted immediately below:



Operation assisted by gas struts for easy lifting.

93.     As more particularly set forth above, Claim 15 of the '314 Patent recites the "gate of claim 13, wherein the spring assembly is configured to assist movement of the gate frame from the closed position to the open position," as depicted immediately above.

94.     As more particularly set forth above, Claim 16 of the '314 Patent recites the "gate of claim 13, further comprising: (c) a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position," as depicted below:



95.    As more particularly set forth above, Claim 22 of the '314 Patent recites the "gate of claim 13, wherein the spring assembly is configured to hold the upper arm and the lower arm generally vertically when the gate frame is in the open position," as depicted below:



96.    As more particularly set forth above, Claim 23 of the '314 Patent recites the "gate of claim 13, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame," as depicted below:



22

97.    The Accused Products meet the claim language as specified in Paragraphs 82 through 96 above, and all of the foregoing elements are contained in the Accused Products made, sold, offered for sale, and/or imported into the United States by Defendant, as shown above and otherwise herein.

98.    By making, using, selling, offering for sale, and/or importing into the United States the Accused Products, Defendant has infringed, and continues to infringe, at least Claims 1, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 23 of the '314 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

99.    Defendant has knowledge of the '314 Patent at least by virtue of PS Industries' First Cease and Desist Letter dated February 8, 2021, and Second Cease and Desist Letter dated August 27, 2025.

100.    Despite Defendant's knowledge of the '314 Patent and its infringing activities, Defendant has infringed, and continues to infringe the '314 Patent by making, using, selling, offering for sale, and/or importing into the United States a safety gate that practices at least Claims 1, 7, 8, 9, 11, 12, 13, 14, 15, 16, 22, and 23 of the '314 Patent.

101.    Defendant's willful and intentional infringement is without regard for PS Industries' patent rights and constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C § 284.

102.    The ongoing and continuous infringement by Defendant entitles PS Industries to an injunction pursuant to 35 U.S.C. § 283, permanently enjoining Defendant and others within the scope of Fed. R. Civ. P. 65 from further infringement of PS Industries' patent rights.

103.    PS Industries has suffered, and continues to suffer, damages due to Defendant's infringement of the '314 Patent, and PS Industries is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284.

104.    PS Industries has been irreparably harmed by Defendant's infringement of the '314 Patent, and will continue to be irreparably harmed.

105.    PS Industries has no adequate remedy at law.

<b><u>COUNT II</u></b><br><b><u>INFRINGEMENT OF THE '603 PATENT</u></b>

106.    Plaintiff re-alleges and re-asserts Paragraphs 1 through 105 as if fully set forth herein.

107.    Defendant has made, used, sold, offered for sale, and/or imported safety gates, including the Accused Products, that practice at least Claims 1, 2, 8, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, and 23 of the '603 Patent. Such unlawful conduct continues as of the filing of this Complaint.

108.    Specifically, the Accused Products meet all limitations of at least Claims 1, 2, 8, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, and 23 of the '603 Patent.

109.    As more particularly set forth above, Claim 1 of the '603 Patent recites "A manually operated gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface . . . ," as depicted below:



110.    Continuing, Claim 1 of the '603 Patent provides for "the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram. . . .," as depicted below:



25

111.    Continuing further, Claim 1 of the '603 Patent recites "the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:



CLOSED POSITION: UPPER ARM AND
LOWER ARM GENERALLY HORIZONTAL          OPEN POSITION: UPPER ARM AND
                                         LOWER ARM GENERALLY VERTICAL

112.    Claim 1 of the '603 Patent further requires "(b) a spring assembly coupled to the gate frame, the spring assembly configured to maintain movement of the gate frame from a self-close position, between the open position and the closed position, to the closed position at a generally constant angular velocity after the gate frame has been manually pivoted from the open position toward the closed position . . ." as depicted below:



Operation assisted by gas struts for easy lifting.

113.    Continuing, Claim 1 of the '603 Patent requires "wherein the spring assembly is configured to hold the gate frame in the open position when the gate frame is in the open position," as depicted below:



114.    As more particularly set forth above, Claim 2 of the '603 Patent recites the "gate of claim 1, wherein the spring assembly is further configured to dampen movement of the gate frame from the open position to the self-close position."

27

115.    As more particularly set forth above, Claim 8 of the '603 Patent recites the "gate of claim 1, wherein the upper arm is coupled to the proximal upright member at an upper pivot point, wherein the lower arm is coupled to the proximal upright member at a lower pivot point, and wherein the lower pivot point is located nearer to the distal upright member than is the upper pivot point when the gate frame is in the closed position," as shown below:



116.    As more particularly set forth above, Claim 10 of the '603 Patent recites the "gate of claim 1, wherein the spring assembly is further configured to assist movement of the gate frame from the closed position to the open position," as shown below:



117.    As more particularly set forth above, Claim 11 of the '603 Patent recites the "gate of claim 1, further comprising: (c) a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position," as shown immediately above.

118.    As more particularly set forth above, Claim 13 of the '603 Patent recites the "gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame," as shown below:



119.    As more particularly set forth above, Claim 14 of the '603 Patent recites the "gate of claim 1, wherein the upper arm and the lower arm are spaced apart from one another when the gate frame is in the open position," as shown below:



120.    As more particularly set forth above, Claim 15 of the '603 Patent recites the "gate of claim 1, wherein the spring assembly comprises a fluid spring," as shown below:



121.    As more particularly set forth above, Claim 16 of the '603 Patent recites "A manually operated fall prevention gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface . . . ," as depicted below:



122.    Continuing, Claim 16 of the '603 Patent provides for "the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram. . . .," as depicted below:



123.    Continuing further, Claim 16 of the '603 Patent provides "the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:



CLOSED POSITION: UPPER ARM AND
LOWER ARM GENERALLY HORIZONTAL

OPEN POSITION: UPPER ARM AND
LOWER ARM GENERALLY VERTICAL

124.    Claim 16 of the '603 Patent additionally requires "(b) a spring assembly coupled to the gate frame, the spring assembly configured to dampen manual movement of the gate frame from the open position toward the closed position to a self-close position and to maintain movement of the gate frame from the self-close position to the closed position at a generally constant angular velocity, wherein the self-close position is disposed between the open position and the closed position . . .," as depicted below:

33



**SPRING ASSEMBLY**

Operation assisted by gas struts for easy lifting.

125.    Further, Claim 16 of the '603 Patent further requires "the spring assembly is configured to hold the gate frame in the open position when the gate frame is in the open position," as depicted below:



SentryGuard Single Gate Closed and Open at Dock Door

**CLOSED POSITION: UPPER ARM AND LOWER ARM GENERALLY HORIZONTAL**    **OPEN POSITION: UPPER ARM AND LOWER ARM GENERALLY VERTICAL**

126.    As more particularly set forth above, Claim 17 of the '603 Patent recites the "gate of claim 16, wherein the gate frame forms an angle between the lower arm and a horizontal, and

34

wherein the angle is between 45 degrees and 80 degrees when the gate frame is in the self-close position."

127.    As more particularly set forth above, Claim 18 of the '603 Patent recites the "gate of claim 16, wherein the gate frame forms an angle between the lower arm and a horizontal, and wherein the angle is between 65 degrees and 80 degrees when the gate frame is in the self-close position."

128.    As more particularly set forth above, Claim 20 of the '603 Patent recites the "gate of claim 16, wherein the spring assembly is coupled to the lower arm and the distal upright member," as depicted below:



129.    As more particularly set forth above, Claim 21 of the '603 Patent recites the "gate of claim 16, wherein the spring assembly is further configured to assist movement of the gate from the closed position to the open position," as depicted below:



130.    As more particularly set forth above, Claim 22 of the '603 Patent recites the "gate of claim 16, wherein the upper arm is coupled to the proximal upright member at an upper pivot point, wherein the lower arm is coupled to the proximal upright member at a lower pivot point, and wherein the lower pivot point is located nearer to the distal end than is the upper pivot point when the gate frame is in the closed position," as depicted below:



131.    As more particularly set forth above, Claim 23 of the '603 Patent recites the "gate of claim 16, wherein the upper arm and the lower arm are spaced apart from one another when the gate frame is in the open position," as depicted below:



SentryGuard Single Gate Closed and Open at Dock Door

OPEN POSITION: UPPER ARM AND
LOWER ARM SPACED APART

132.    The Accused Products meet the claim language as specified in Paragraphs 109 through 131 above, and all of the foregoing elements are contained in the Accused Products made, sold, offered for sale, and/or imported into the United States by Defendant, as shown above and otherwise herein.

133.    By making, using, selling, offering for sale, and/or importing into the United States the Accused Products, Defendant has infringed, and continues to infringe, at least Claims 1, 2, 8, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 22, and 23 of the '603 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

134.    Defendant has knowledge of the '603 Patent at least by virtue of PS Industries' Second Cease and Desist Letter dated August 27, 2025.

135.    Despite Defendant's knowledge of the '603 Patent and its infringing activities, Defendant has infringed, and continues to infringe the '603 Patent by making, using, selling,

offering for sale, and/or importing into the United States a safety gate that practices at least Claims 1 and 16 of the '603 Patent.

136.    Defendant's willful and intentional infringement is without regard for PS Industries' patent rights and constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C § 284.

137.    The ongoing and continuous infringement by Defendant entitles PS Industries to an injunction pursuant to 35 U.S.C. § 283, permanently enjoining Defendant and others within the scope of Fed. R. Civ. P. 65 from further infringement of PS Industries' patent rights.

138.    PS Industries has suffered, and continues to suffer, damages due to Defendant's infringement of the '603 Patent, and PS Industries is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284.

139.    PS Industries has been irreparably harmed by Defendant's infringement of the '603 Patent, and will continue to be irreparably harmed.

140.    PS Industries has no adequate remedy at law.

**COUNT III**
**INFRINGEMENT OF THE '898 PATENT**

141.    Plaintiff re-alleges and re-asserts Paragraphs 1 through 140 as if fully set forth herein.

142.    Defendant has made, used, sold, offered for sale, and/or imported safety gates, including the Accused Products, that practice at least Claims 1, 7, 8, 10, 11, 14, 15, 16, 20, and 21 of the '898 Patent. Such unlawful conduct continues as of the filing of this Complaint.

143.    Specifically, the Accused Products meet all limitations of at least Claims 1, 7, 8, 10, 11, 14, 15, 16, 20, and 21 of the '898 Patent.

144.    As more particularly set forth above, Claim 1 of the '898 Patent recites: "A manually operated gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface . . . ," as depicted below:



145.    Continuing, Claim 1 of the '898 Patent provides for "the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram. . . .," as depicted below:



146.    Continuing further, Claim 1 of the '898 Patent provides for "the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:



SentryGuard Single Gate Closed and Open at Dock Door

**CLOSED POSITION: UPPER ARM AND LOWER ARM GENERALLY HORIZONTAL**    **OPEN POSITION: UPPER ARM AND LOWER ARM GENERALLY VERTICAL**

147.    Moreover, Claim 1 of the '898 Patent provides for "(b) a spring assembly coupled to the gate frame, the spring assembly being positioned closer to the distal upright member than to the proximal upright member, the spring assembly configured to assist movement of the gate frame from the closed position to the open position . . . ," as depicted below:





148.    Continuing, Claim 1 of the '898 Patent also provides that the manually operated gate assembly is "configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position," as depicted below:



41

149.    As more particularly set forth above, Claim 7 of the '898 Patent recites the "gate of claim 1, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame," as depicted below:



150.    As more particularly set forth above, Claim 8 of the '898 Patent recites the "gate of claim 1, wherein the spring assembly comprises a fluid spring," as depicted below:



151.    As more particularly set forth above, Claim 10 of the '898 Patent recites the "gate of claim 1, further comprising: a gate catch anchored to the stationary surface and configured to receive the distal upright member when the gate frame is in the closed position," as depicted below:



152.    As more particularly set forth above, Claim 11 of the '898 Patent recites the "gate of claim 1, wherein the spring assembly comprises one or more gas springs," as depicted below:



153.    As more particularly set forth above, Claim 14 of the '898 Patent recites: "A manually operated gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram . . . ," as depicted below:

43





154. Continuing, Claim 14 of the '898 Patent further provides for "the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:

44



CLOSED POSITION: UPPER ARM AND    OPEN POSITION: UPPER ARM AND
LOWER ARM GENERALLY HORIZONTAL    LOWER ARM GENERALLY VERTICAL

155.    Continuing further, Claim 14 of the '898 Patent additionally recites "(b) a spring assembly coupled to the gate frame, the spring assembly pivotably coupling the lower arm to the distal upright member of the gate frame . . . ," as depicted below:





156.    Lastly, Claim 14 of the '898 Patent also provides "the spring assembly configured to assist movement of the gate frame from the closed position to the open position and configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position," as depicted below:



SentryGuard Single Gate Closed and Open at Dock Door

**CLOSED POSITION: UPPER ARM AND LOWER ARM GENERALLY HORIZONTAL**   **OPEN POSITION: UPPER ARM AND LOWER ARM GENERALLY VERTICAL**

157.    As more particularly set forth above, Claim 15 of the '898 Patent recites: "A manually operated gate comprising: (a) a gate frame that includes a proximal upright member, an upper arm, a lower arm, and a distal upright member, the proximal upright member being anchored to a stationary surface, the upper arm and the lower arm being coupled to the proximal upright member and the distal upright member to form a parallelogram . . . ," as depicted below:





158.    Claim 15 of the '898 Patent further provides "the upper arm and the lower arm pivoting relative to the proximal upright member and the distal upright member as the gate frame moves between an open position in which the upper arm and the lower arm are generally vertical

47

and a closed position in which the upper arm and the lower arm are generally horizontal . . . ," as depicted below:



SentryGuard Single Gate Closed and Open at Dock Door

**CLOSED POSITION: UPPER ARM AND LOWER ARM GENERALLY HORIZONTAL**        **OPEN POSITION: UPPER ARM AND LOWER ARM GENERALLY VERTICAL**

159.    Continuing, Claim 15 of the '898 Patent recites "(b) a spring assembly coupled to the gate frame closer to the distal upright member than to the proximal upright member, the spring assembly configured to assist movement of the gate frame from the closed position to the open position . . . ," as depicted below:





160.    Finally, Claim 15 of the '898 Patent provides that the manually operated gate is "configured to hold the upper arm and the lower arm generally vertical when the gate frame is in the open position," as depicted below:

49



161.    As more particularly set forth above, Claim 16 of the '898 Patent recites the "gate of claim 15, wherein the spring assembly is coupled to the lower arm and the distal upright member of the gate frame," as depicted below:



162.    As more particularly set forth above, Claim 20 of the '898 Patent recites the "gate of claim 15, wherein the spring assembly comprises a gas spring, a hydraulic spring, or a steel coil spring," as shown below:



163.    As more particularly set forth above, Claim 21 of the '898 Patent recites the "gate of claim 15, wherein the spring assembly comprises a pair of springs pivotably coupling the lower arm to the distal upright member of the gate frame," as depicted below and immediately above:



164.    The Accused Products meet the claim language as specified in Paragraphs 144 through 163 above, and all of the foregoing elements are contained in the Accused Products made, sold, offered for sale, and/or imported into the United States by Defendant, as shown above and otherwise herein.

165.    By making, using, selling, offering for sale, and/or importing into the United States the Accused Products, Defendant has infringed, and continues to infringe, at least Claims 1, 7, 8, 10, 11, 14, 15, 16, 20, and 21 of the '898 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

166.    Defendant has knowledge of the '898 Patent at least by virtue of PS Industries' Second Cease and Desist Letter dated August 27, 2025.

167.    Despite Defendant's knowledge of the '898 Patent and its infringing activities, Defendant has infringed, and continues to infringe the '898 Patent by making, using, selling, offering for sale, and/or importing into the United States a safety gate that practices at least Claims 1, 7, 8, 10, 11, 14, 15, 16, 20, and 21 of the '898 Patent.

168.    Defendant's willful and intentional infringement is without regard for PS Industries' patent rights and constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C § 284.

169.    The ongoing and continuous infringement by Defendant entitles PS Industries to an injunction pursuant to 35 U.S.C. § 283, permanently enjoining Defendant and others within the scope of Fed. R. Civ. P. 65 from further infringement of PS Industries' patent rights.

170.    PS Industries has suffered, and continues to suffer, damages due to Defendant's infringement of the '898 Patent, and PS Industries is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284.

171.    PS Industries has been irreparably harmed by Defendant's infringement of the '898 Patent, and will continue to be irreparably harmed.

172.    PS Industries has no adequate remedy at law.

WHEREFORE, PS Industries requests the relief sought in the Prayer for Relief, below.

**PRAYER FOR RELIEF**

WHEREFORE, PS Industries respectfully requests this Court to enter judgment in its favor and against Defendant, Garlock Safety Systems, Inc., on all claims set forth *supra*, and respectfully requests this Court to:

(a) Adjudge that Defendant has infringed, and continues to infringe, the Asserted Claims of Plaintiff's Patents in violation of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(b) Award PS Industries all available and legally permissible damages and relief (including without limitation damages, lost profits, and/or a reasonably royalty) sufficient to compensate it for Defendant's infringement of Plaintiff's Patents, including to the fullest extent permitted by 35 U.S.C. § 284, together with interest and costs, in amounts to be determined at and, where appropriate, following trial;

(c) Adjudge Defendant's infringement of Plaintiff's Patents to be willful and award PS Industries treble damages in accordance with 35 U.S.C. § 284;

(d) Immediately and permanently enjoin Defendant, and all of its agents, servants, employees, successors, assigns, and all  persons acting in concert or in active participation with Defendant, under 35 U.S.C. § 283 from making, using, selling, offering for sale, and/or importing into the United States the Accused Products and any other safety gate that infringes any of the asserted claims of Plaintiff's Patents, either literally or, *at an absolute minimum*, under the doctrine of equivalents;

(e) Declare this to be an exceptional case under 35 U.S.C. § 285 and award PS Industries its costs, expenses, attorneys' fees, and all other recoverable disbursements in this action;

(f)  Require Defendant to deliver up for destruction all of the Accused Products and any

other safety gates that infringe any of the asserted claims of Plaintiff's Patents, either

literally or under the doctrine of equivalents; and

(g)  Award PS Industries such other and further relief as may be permitted and is

appropriate at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff, PS Industries, hereby demands a trial by jury of all issues so triable as a matter of

law pursuant to Fed. R. Civ. P. 38(b).


Dated: March 31, 2026                     Respectfully submitted,

                                          */s/ Nathan Sportel*
                                          Nathan Sportel (P87032)
                                          sporteln@millerjohnson.com
                                          **Miller Johnson**
                                          45 Ottawa Ave. SW, Suite 1100
                                          Grand Rapids, MI 49503
                                          Telephone: (616) 831-1793

                                          Jason J. Keener (IL6280337)
                                          jkeener@irwinip.com
                                          Daniel Zhang (IL63336996)
                                          dzhang@irwinip.com
                                          **Irwin IP LLP, a part of Miller Johnson**
                                          150 N. Wacker Dr., Suite 700
                                          Chicago, Illinois 60606
                                          Telephone: (312) 667-6080

                                          Peter A. Matos (*Attorney Admission to be requested*)
                                          Florida Bar No. 992,879
                                          pmatos@malloylaw.com
                                          W. John Eagan (*Attorney Admission to be requested*)
                                          Florida Bar No. 105,101
                                          johneagan@malloylaw.com
                                          Kelly Marie Malloy (*Attorney Admission to be requested*)
                                          Florida Bar No. 1,038,927
                                          kmalloy@malloylaw.com

                                          54

Zac Davis (*Attorney Admission to be requested*)
Florida Bar No. 1,039,020
zdavis@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. 3rd Avenue
Historic Coral Way
Miami, Florida 33129
Telephone: (305) 858-8000

*Attorneys for Plaintiff*